In re SECURITIES AND EXCHANGE COMMISSION

v.

WHITE & CO., INC., et al.

Morris SHENKER, Appellant,

v.

Hugh S. HAUCK, Trustee, et al., Appellees.

No. 76–1193.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1976.

Decided Dec. 27, 1976.

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

Michael G. Goldstein, St. Louis, Mo., for appellant; Bernard J. Mellman, St. Louis, Mo., on brief.

Stephen P. Harbeck, Securities Investor Protection Corp., Washington, D.C., and Harry O. Moline, St. Louis, Mo., for appellees; Theodore H. Focht, Wilfred R. Caron, Michael E. Don, Washington, D.C., on brief.

Before GIBSON, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and HENLEY, Circuit Judge.

VAN OOSTERHOUT, Senior Circuit Judge.

This is an appeal by claimant Morris Shenker from final judgment of the district court affirming a determination by the bankruptcy judge that Shenker was not a customer of White & Company, Inc., as such term is defined in Section 6(c)(2)(A)(ii) of the Securities Investor Protection Act of 1970 (SIPA), 15 U.S.C. § 78fff(c)(2)(A)(ii).

In the proceeding below it was determined that Shenker was not a customer of White & Company, Inc., because he fell within the exception of the above definitional statute, which specifically provides that the term "customer" "shall not include any person to the extent that such person has a claim for property which by contract, agreement, or understanding, or by opera-

tion of law, is part of the capital of the debtor or is subordinated to the claims of creditors of the debtor." More precisely, the issue is whether the court properly determined that claimant Shenker had subordinated his claims to claims of creditors of the debtor and that the subordination agreement had not been terminated. We agree with the trial court that Shenker's claims were subordinated to the claims of all other present and future creditors of the organization arising out of any matters occurring prior to November 25, 1971 (the "maturity date" of the subordination agreement), and affirm.

■ For the purpose of disposing of the narrow issue presented by this appeal, we deem it unnecessary to consider in detail the history and purpose of SIPA. We note that the purposes of SIPA were to protect against individual hardship caused to customers of brokerage houses by broker failures, to restore investor confidence, and to upgrade the financial responsibility required of registered brokers and dealers. SIPA created a Securities Investor Protection Corporation (SIPC), a nonprofit membership corporation, for the purpose of providing relief to customers of failing brokers whose customers had left cash or securities on deposit. Provision is made for the enforcement of such rights through the bankruptcy court. *See Securities Investors Protection Corp. v. Barbour,* 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *Securities & Exchange Commission v. F. O. Baroff Co., Inc.,* 497 F.2d 280 (2d Cir. 1974).

On March 23, 1972, SIPC commenced this proceeding for liquidation of White & Company, a brokerage firm. On March 31, 1972, an order was entered adjudicating that White's customers were in need of protection under SIPA and ordering Hauck as Trustee to liquidate the business. The validity of such order is not challenged.

■ Shenker filed three claims with the Trustee claiming status as a customer under SIPA, one based upon a cash account, a second based upon a margin account, and a third based upon a subordinated account. The court found all securities involved in the three claims are listed in the schedule of securities contained in the 1970 subordination agreement and such finding is supported by substantial evidence.

Shenker was a stockholder of White & Company and he, along with others, for an adequate consideration, had by a series of subordination agreements lent securities and money to White & Company for a number of years. The subordination agreement relied upon by the bankruptcy court and the trial court is dated November 23, 1970.[1]

Shenker's principal contention is that the November 1970 subordination agreement expired by its terms on November 25, 1971, and that hence the agreement was no longer in effect at the time of the March 1972 liquidation order. With respect to such contention, the bankruptcy judge determined:

[T]he November 23, 1970, Agreement is not to be construed so restrictively, narrowly, as Shenker contends.

Although that agreement specifies a maturity date (Nov. 25, 1971), the agreement, just as specifically, subordinates the accounts and securities embraced by it to the claims of all other present and future creditors arising out of matters occurring prior to November 25, 1971. What this means, simply, it seems to me, is that the subordination is effective, even beyond November 25, 1971, as to all creditors' claims in existence on November 23, 1970 and as to all creditors' claims

---

1. Shenker also executed on April 15, 1971, an additional subordination agreement. Neither the bankruptcy judge nor the trial court relied upon this agreement as a basis for its determination, asserting as a reason that the agreement did not contain a required schedule of securities subordinated, while the body of the agreement limited the loan of securities to those scheduled. Appellees claim that the April 15, 1971, agreement is valid since the securities intended to be subordinated are identified by the record. Since we affirm on the basis of the November 23, 1970, agreement, we need not and do not determine the validity of the 1971 agreement.

arising out of transactions with the debtor occurring at any time subsequent to November 23, 1970, and prior to November 25, 1971. It does not mean, in my judgment, that, once November 25, 1971, arrived, no longer were the securities to stand subordinated to any claims, which is what Shenker contends. Such contention is manifestly contrary to the plain language of the Agreement.

The trial court agreed.

The November 1970 subordination agreement is quite long. It contains unambiguous provisions supporting the decision below, which read:

> [T]he lender does hereby irrevocably agree for himself, his heirs, executors, administrators and assigns to subordinate and hereby irrevocably does subordinate any and all claims with respect to said account or accounts (whether for money, securities, other property, or interests therein), which he, as owner, creditor or otherwise, may now or at any time hereafter have against the Organization *to the claims of all other present and future creditors of the Organization arising out of any matters occurring prior to Nov. 25, 1971* (hereinafter called Maturity Date),
>
> . . .
>
> \* \* \* \* \* \*
>
> *[T]he lender shall not be entitled to participate or share ratably or otherwise, in the distribution of the assets of the Organization until all claims of all other present and future creditors of the Organization arising out of any matter occurring prior to the Maturity Date have been fully satisfied,* . . . (Emphasis added.)

We find nothing in the agreement as a whole which is inconsistent with the foregoing language.

 Agreements of creditors to subordinate their indebtedness to that of other creditors will be given effect in bankruptcy proceedings. *St. Louis Union Trust Co. v. Champion Shoe Machinery Co.,* 109 F.2d 313, 316 (8th Cir. 1940); *Bird & Sons Sales Corp. v. Tobin,* 78 F.2d 371, 373 (8th Cir. 1935). Such agreements have been uniformly enforced. *In re Credit Industrial Corporation,* 366 F.2d 402, 410 (2d Cir. 1966).

A common rule of construction is that words in a contract must be given their plain and ordinary meaning, as an ordinary, average, or reasonable person would understand them. *Beister v. John Hancock Mutual Life Ins. Co.,* 356 F.2d 634, 639 (8th Cir. 1966); *Davis v. Liberty Mutual Ins. Co.,* 308 F.2d 709 (8th Cir. 1962); *Community Federal Savings & Loan Ass'n v. General Casualty Co.,* 274 F.2d 620, 624 (8th Cir. 1960).

The bankruptcy judge, from an examination of the bankruptcy records, found that there were very substantial outstanding claims upon obligations incurred by White & Company prior to November 25, 1971. We agree with the bankruptcy judge and the trial court that the November 1970 subordination agreement covers obligations arising out of any matters occurring prior to November 25, 1971, and with the further determination that substantial outstanding customer claims arose prior to the November 25, 1971, termination date.

Affirmed.