**In the Matter of EATON FACTORS CO., INC., Bankrupt.**

**Bankruptcy No. 78–B–1551–RB.**

United States Bankruptcy Court,
S. D. New York.

Jan. 3, 1980.

Hahn, Hessen, Margolis & Ryan, New York City, for trustee; Michael S. Landes, Gilbert Backenroth, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

The bankrupt, Eaton Factors Co., Inc., formerly in the factoring and financing business, was adjudged bankrupt following the filing against it of an involuntary petition.

The trustee, in keeping with the discharge of the duties imposed by Section 47a(8) of the 1898 Bankruptcy Act, 11 U.S.C. § 75a(8), and Rule 306(a), 411 U.S. 1046, 93 S.Ct. 3131, 37 L.Ed.2d lvi, to examine claims and take appropriate action, now moves for an order enforcing, as against the unsecured claimants affected, the subordination provisions of notes and debentures issued to them by the bankrupt in favor of the senior bank and financial lending institutional creditors. The trustee also asks the court to fix the class of senior creditors entitled to have the dividends otherwise payable to the subordinated creditors distributed *pro rata* to that class.

Turning to the first part of the relief requested, the trustee plaintiff has submitted exhibits in support of his request for subordination and various affidavits from some of the senior lenders. Exhibit (or Schedule) "A" lists the claims of twenty creditors (excluding duplications) who timely filed against the estate but who are affected by this motion because they are holders of subordinated notes of Eaton Factors, in the aggregate amount of $168,970.00. Exhibit "B" is a sample copy of such notes, and contains, on its face, the following:

"By acceptance of this note, the payee hereby agrees (1) that the payment of the principal sum or any part hereof, and the interest due thereon is and shall remain subject and subordinated to any indebtedness of Eaton Factors Co., Inc. to any lending institutions whether private or public, Bank, Finance or Discount Company . . . ."

Exhibit (or Schedule) "C" lists the claims of 67 creditors (excluding duplications) who have timely filed claims in the aggregate amount of $566,757.03, based on debentures issued by the bankrupt and which debentures state that

"Payment of this debenture, both principal and interest shall, in case of any bankruptcy . . . or other similar proceedings, voluntary or otherwise, of or with respect to the Corporation, be subordinated to all liabilities and obligations of the Corporation then existing . . . to any banks or lending institutions and, in order to effectuate such subordinations, the provisions hereof shall . . . constitute an assignment of the amounts payable hereon . . . to such banks and lending institutions, pro rata in accordance with the amounts of their respective claims; and such banks and lending institutions shall be entitled to prove or assert any and all claims with respect to the debentures, for their pro rate (sic) benefit, and to receive and apply to the payment in full of their respective claims against the Corporation . . . all dividends and other distributions and payments which may be payable with respect thereto."

Thus, the trustee seeks the legal enforcement of the above-mentioned subordination provisions, and has been joined in his application by various senior lenders.

A hearing was held before this court upon notice to all the affected creditors.[1]

1. At the hearing, the trustee conceded that some persons holding notes and debentures of Eaton Factors did not receive documents containing the above-mentioned provisions and

that the trustee sought subordination of only those persons who received the type of documents presented in Exhibits "B" and "C".

Several affected creditors opposed the trustee at the hearing, including one who filed a letter of objection to the instant motion. The tenor of the objections was that the persons holding the notes and debentures involved were not aware of the subordination provisions when they purchased their shares, due in part to the casual manner in which the business was run and its notes issued, and that the notes and debentures issued by Eaton Factors were, unfairly, not uniform, in that some contained subordination provisions and others did not. Thus, "equitable" grounds are pressed to this court to deny the enforcement of the subordinations.[2]

■ There can no longer be question that subordination agreements are enforced by bankruptcy courts. 3A *Collier on Bankruptcy* (14th edition 1975) ¶ 65.02[2] states that:

"Section [64a] of the Bankruptcy Act . . ., for reasons of public policy, creates priorities regardless of the parties' contracts and overrides inconsistent covenants. But this does not mean that the parties are prohibited from making contracts for a priority or subordination in so far as they do not impinge upon statutory priorities. Section 65a . . . means no more than that dividends paid to creditors shall be pro rata except where there is a priority given by law or by lawful contractual arrangement between the parties. Matter of Aktiebolaget Kreuger & Toll, 96 F.2d 768 (2d Cir. 1938)."

See also *In re Credit Industrial Corp.*, 366 F.2d 402, 410 (2d Cir. 1966) and *S.E.C. v. White & Co., Inc.*, 546 F.2d 789, 792 (8th Cir. 1976).

The objections raised by some of the affected creditors to the enforcement of the subordination clauses have been voiced before in the bankruptcy context. *In re Credit Industrial Corp., supra*; *In the Matter of Stirling Homex Corp.*, 579 F.2d 206 (2d Cir. 1978); *In the Matter of Weis Securities, Inc.*, 425 F.Supp. 212 (S.D.N.Y.1977), unreported affirmance, (2d Cir. June 12, 1978).

In the *Credit Industrial Corp.* case, the bankrupt corporation (CIC) sought to enforce the subordination provision of its high-interest promissory notes for the benefit of its institutional lenders. Objecting creditors asserted, among other things, that the institutional lenders had not shown that they had advanced funds in reliance on the subordination agreements, and further that the agreements were invalid since CIC had fraudulently induced the noteholders to accept them. *Id.*, at 405.

■ The Court of Appeals stated that: "In bankruptcy, the parties claiming rights to participate in the assets of the bankrupt must do so in accordance with such contractual rights against the debtor as they may have purchased or acquired. . . . Attention, therefore, must be focused on the contract upon the basis of which the noteholders loaned various amounts to CIC."

*Id.*, at 407. Looking to the contracts there involved, the CIC court held that the subordination agreements were lawful, their terms explicit and consensual, and that therefore equitable considerations, such as reliance, were not relevant to the enforceability of the provisions.[3]

In *Matter of Stirling Homex Corp., supra*, a Chapter X case, the court held that tort claims of allegedly defrauded stockholders were subordinate to those of the debtor's general unsecured creditors on the premise that the loss to stockholders should not be reimbursed by innocent general creditors. While *Stirling Homex* is not controlling in the instant motion, the court did note that

---

2. But, as the court stated at the hearing (Transcript, p. 14), on the facts of this case, the investors, many of whom were personal friends of the president of Eaton Factors, Martin Eaton, have little grounds for complaint: "You people who lend money are the ones who should have kept your eyes [open]. It is not the prime debt who is going to worry about you, it is you yourself."

3. Ordinary rules governing the construction of contracts should control the interpretation of the subordination agreement which means giving the words "their plain and ordinary meaning, as an ordinary, average, or reasonable person would understand them." *S.E.C. v. White & Co., Inc.*, 546 F.2d 789, 792 (8th Cir. 1976).

"[a]s a general rule equity prefers the claims of innocent general creditors over the claims of shareholders or subordinated creditors deceived by officers of the corporation."

*Id.*, at 213.

And, as stated by the Court of Appeals in *First National Bank of Hollywood v. American Foam Rubber Corp.*, 530 F.2d 450, 454 (2d Cir. 1976),

"Various theories have been advanced to support the enforcement of subordination agreements in bankruptcy: equitable lien, equitable assignment, constructive trust and enforcement of contractual rights. (Citations omitted). This circuit has favored the recognition of priorities based upon the 'lawful contractual arrangements between the parties.'"

In short, the motion before the court clearly falls under the guiding principles of *CIC, et al.* The debenture and note holders here held contractually-based interests, the terms of which are clearly laid out on the face of the documents. Whether or not these investors were aware of what type of interest they were purchasing, there was no ambiguity as to the meaning or enforceability of these subordination provisions.

■ It is not inappropriate at this point to examine the language and intent of the 1978 Bankruptcy Reform Act, effective October 1, 1979. While the new Code does not control the administration of this case,[4] Section 403(a), this court may construe the former Act in harmony with the Code, where no explicit inconsistent provision exists. *U. S. ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 78, 77 S.Ct. 618, 621, 1 L.Ed.2d 652 (1957). See also *In re Stirling Homex Corp.*, *supra*, at 214–215.

■ Section 510(a) of the new Code, 11 U.S.C. § 510(a), provides that:

"A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law."[5]

Thus, there can be no more question but that the agreements presented here in the form of lawful, written contracts, are enforceable in the administration of this bankrupt estate.

The only remaining question is the determination of the class of senior creditors entitled to the benefits of this enforcement of subordination agreements. According to the trustee, 13 senior claimants are entitled to enforce the subordination agreements. Their claims, though not yet finally determined for purposes of allowability, amount to just under $2 million.

■ Representatives of four of the senior lenders have submitted affidavits to this court showing the amount and timely filing of their claims, and establishing that they are "banks" or "lending institutions" within the meaning of the provisions contained in the notes and debentures. Such a showing on the part of all creditors claiming the right of subordination satisfies the court that they are indeed entitled thereto. Those other lenders claiming the benefit of the enforcement of these subordination agreements are to submit proof of their status to the trustee within ten days from entry of the order to be submitted in conformity with this decision, in such form as will satisfy him that they are entitled to the same position as those who filed affidavits on this motion.

---

4. The 1898 Act was repealed by Section 401(a) of Title IV of the 1978 Bankruptcy Reform Act effective October 1, 1979, Section 402(a). By virtue of Section 403(a), the new Code will not apply to this debtor whose "case [was] commenced under the [1898] Bankruptcy Act" and must therefore be dealt with as though the 1978 Act had not been enacted. See *Guardian Mortgage Investors v. Unofficial Noteholders-*

*Debentureholders, etc.*, 607 F.2d 1020 at fn. 6, pp. 1022–23 (2d Cir. 1979).

5. See H.R.Rep.No.95–595, 95th Cong., 1st Sess. 359 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess. 74 (1978), U.S.Code Cong. & Admin. News, p. 5787; 3 *Collier on Bankruptcy* ¶¶ 510.01–510.02 (15th ed. 1979).