PELL, Circuit Judge.
 

 Bailey’s Beauticians Supply Co. (Bailey’s) appeals from a district court decision in which the judge concluded that a bankruptcy court had no power, pursuant to the Bankruptcy Act of 1898, 30 Stat. 544 (1898) (repealed 1978), to dismiss an involuntary petition that meets jurisdictional requirements. A related question is whether the district judge correctly reversed the bankruptcy judge’s approval of a compromise reached by Bailey’s assignee for the benefit of creditors and Century Publishing Company (Century).
 

 
 *1064
 
 I. FACTS
 

 On March 29, 1979, Bailey’s executed a general assignment of all its assets to Nathan Yorke (Yorke) for the benefit of its creditors. Yorke notified all known creditors of Bailey’s both of the assignment and that a sale of the estate would be held on May 22, 1979. Shortly after execution of the assignment, an informal creditors committee was formed. The creditors represented had claims aggregating approximately $900,000. A firm of Certified Public Accountants investigated Bailey’s books and records. The creditors committee and its counsel similarly examined Bailey’s books, its principal officers, and accounting personnel. Yorke also made collections on the accounts receivable, reducing the secured debt by approximately thirty percent between March and May 21, 1979.
 

 On May 21, 1979, three creditors with claims aggregating slightly more than $50,-000 filed an involuntary bankruptcy petition. They moved to restrain the sale. The bankruptcy judge ordered the sale to proceed, subject to court approval. After the sale, all parties agreed that approval should be given. The bankruptcy judge so ordered. On the same day, after notice to all parties, the judge authorized payment and discharge of the secured indebtedness remaining due on the accounts receivable and on an inventory loan.
 

 The creditors committee determined that the estate might have a cause of action against Bailey’s parent company, Century, for preferential transfers amounting to $44,000. Century disputed this claim and asserted its own claim against the estate for money loaned and unpaid management fees. The total claimed by Century was over $55,000. The creditors committee and Century reached a settlement of these disputes, subject to court approval. The agreement provided that Century’s claims against Bailey’s would be subordinated to those of other creditors in exchange for the estate’s not pursuing a suit against Century. The committee discovered no other evidence of possible impropriety.
 

 On December 3, 1979, Bailey’s moved to dismiss the bankruptcy proceeding and to approve the settlement with Century. The creditors committee strongly supported this motion at the hearing which followed. At the direction of the bankruptcy court, Bailey’s prepared a draft order containing detailed findings of fact and conclusions of law. When the petitioning creditors objected to the lack of formal, substantiating evidence, Bailey’s requested that they admit or deny, under oath, each finding of fact in the proposed order. The petitioning creditors made no response. On February 8, 1980, the bankruptcy judge approved the Century compromise and dismissed the proceeding. The conclusions stated by the bankruptcy court were that administration of the estate was virtually completed but for the petition and that the interests of the creditors and debtors would be better served if Yorke completed the administration rather than if proceedings on the petition continued.
 

 On appeal to the district court, Judge Marovitz concluded that the bankruptcy judge had no discretion to dismiss the petition but stated that the court was not “unsympathetic to Judge McCormack’s salutary attempt to achieve a fair and orderly disposition of this matter outside the more expensive and time consuming formal proceedings provided for under the Act.” Judge Marovitz subsequently denied Bailey’s motion to alter the judgment to include approval of the Century settlement.
 

 II. DISCUSSION
 

 The Bankruptcy Act of 1898, 30 Stat. 544 (1898) (repealed 1978) (Act), governs this controversy. That Act makes no explicit reference to whether a bankruptcy judge has discretion to dismiss a petition for involuntary bankruptcy that is jurisdictionally sufficient on its face. The Bankruptcy Reform Act of 1978, Pub.L.No.95-598, 92 Stat. 2549 (1978), repealed the Act and enacted a new Bankruptcy Code, codified at 11 U.S.C. §§ 101-151326 (Supp. III 1979) (Code). The Code specifically provides that a bankruptcy judge may dismiss a case when the interests of creditors will be served thereby.
 
 Id.
 
 at § 305(a)(1). Further, section 305(c) provides that such an order of dismissal is not subject to review.
 

 
 *1065
 
 As the appellant has noted, there is ample precedent for construing an existing statute in light of Congressional policies expressed through new legislation. For instance, in
 
 United States ex rel. Hintopoulos v. Shaughnessy,
 
 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957), the Board of Immigration Appeals relied in part on Congressional policies expressed in the Immigration and Nationality Act of 1952 to deny the petitioners’ request for suspension of deportation. Although the 1952 Act was inapplicable to the case, the Supreme Court made clear that it was appropriate for the Board to consider the legislation as relevant to the exercise of its discretion:
 

 The second opinion makes clear that the Board still considered petitioners eligible for suspension under the 1917 Act and denied relief solely as a matter of discretion. And we cannot say that it was improper or arbitrary for the Board to be influenced, in exercising that discretion, by its views as to congressional policy as manifested by the 1952 Act.
 

 Id.
 
 at 78, 77 S.Ct. at 621 (footnote omitted). Relying on
 
 Hintopoulos,
 
 the court in
 
 In re Eaton Factors, Inc.,
 
 3 B.R. 20 (S.D.N.Y.1980), stated: “While the new Code does not control the administration of this case, . . . this court may construe the former Act in harmony with the Code, where no explicit inconsistent provision exists.”
 
 Id.
 
 at 23 (citations omitted). Similarly, in
 
 In re Seafarers Fiberglass Yacht, Inc.,
 
 1 B.R. 358, 361 (E.D.N.Y.1979), the court stated that it was proper to consider the Code “when the result which the new legislation would compel is not precluded in any way by the decisions rendered under the present Bankruptcy Act and Rules.”
 

 We must determine whether either a specific statutory section of the Act or judicial interpretations thereof deny a court’s power to dismiss an involuntary petition. If so, section 305 of the Code has no relevance to this dispute. If not, however, it is quite appropriate for the bankruptcy judge to have exercised his discretion in a manner consistent with the new Code provision.
 

 We find no provision in this Act that specifically precludes a bankruptcy judge from dismissing an involuntary petition when he finds that the interests of all the creditors would best be served thereby. The district court relied primarily on two cases in concluding that such discretion did not exist:
 
 General Electric Co. v. Beehive Telecasting Corp.,
 
 284 F.2d 507, 509 (10th Cir. 1960);
 
 In re Federal Mail Express Co.,
 
 233 F. 691 (S.D.N.Y.1916).
 

 In
 
 Federal Mail,
 
 the issue was whether the court retained the power to appoint a receiver when the debtor had executed an assignment for the benefit of creditors. The court held that “this court has both the power and the absolute discretion to restrain the assignee from administering the estate.” 233 F. at 696. This statement does not logically support the argument urged by the appellee, that a court has
 
 no
 
 power to
 
 permit
 
 an assignee to continue the administration. Further, the holding in
 
 Federal Mail,
 
 read broadly, affirms the power of a court to act in the way most beneficial to creditors. To read
 
 Federal Mail
 
 as the appellees suggest is to completely abrogate that equitable power.
 

 In
 
 General Electric,
 
 the trial court had indefinitely postponed adjudication of an involuntary petition pending the conclusion of a tort suit brought by the debtor against one of the petitioning creditors. After noting that a trial court generally can exercise its discretion to continue a matter, the court stated that when the statutory right to a bankruptcy adjudication is involved, “the trial court is without any discretion in the matter of adjudication.” . 284 F.2d at 509 (citations omitted). The court then quoted 11 U.S.C. § 41(d) (repealed in 1978), for the proposition that:
 

 In the event of a contest on the petition for adjudication the court is under statutory mandate to ‘ * * * determine as soon as may be, the issues presented by the pleadings * * * and make the adjudication or dismiss the petition.’... And decisional law imposes upon the bankruptcy court the duty to ‘ * * * promptly determine the question of adjudication
 

 Id.
 
 (citations omitted). The court subsequently found,
 
 inter alia,
 
 that immediate adjudication would not interfere with prosecution of the tort claim because the trustee
 
 *1066
 
 would be competent to prosecute it and the court could ensure that there would be no collusion between the trustee and the creditor-defendant.
 
 Id.
 

 Read as a whole, we think that the
 
 General Electric
 
 opinion holds only that when the bankruptcy court determines that a petition should not be dismissed, it lacks ordinary discretion to continue the matter, thus delaying the adjudication. Even this rule would not apply, according to
 
 General Electric,
 
 if prompt adjudication would prejudice the creditors.
 
 [1]
 
 We cannot read the Tenth Circuit opinion as prohibiting a bankruptcy court from exercising its discretion
 
 to dismiss
 
 a petition when proceeding in bankruptcy would result in needless, prejudicial delay to the creditors.
 
 [2]
 

 We cannot conclude, on the basis of either
 
 Federal Mail
 
 or
 
 General Electric,
 
 that the Act denies a bankruptcy judge the power to dismiss an involuntary petition when he finds that the interests of the creditors as a whole would be served thereby. Further, two cases support the broad contention that such discretion exists.
 

 In
 
 Publishers Distributing Corp. v. J. Louis Motz News Co.,
 
 238 F.2d 617 (6th Cir. 1956) (per curiam), the Sixth Circuit affirmed the district court’s dismissal of an involuntary petition.
 
 Publishers Distributing Corp.
 
 is distinguishable from the case at bar in that the petitioning creditors had instigated the assignment for benefit of creditors. The Sixth Circuit did not, however, rely on just this one factor. The court also noted:
 

 that a suitable person was appointed and approved as assignee and has completed more than half of his duties as such; that such trustee is in position to complete the administration of his trust expeditiously and in a fair and impartial manner; and that a duplication of unnecessary expenses and undue delay would result should the assignment be disturbed.
 

 Id.
 
 Relying on all of these considerations, the court stated “that it would be inequitable to adjudicate the appellee corporation á bankrupt under the circumstances of the case.”
 
 Id.
 

 In
 
 International Shoe Co. v. Smith-Cole, Inc.,
 
 62 F.2d 972 (10th Cir. 1933), the court relied on two factors in dismissing the case. The first was that the creditors had failed to prove the insolvency of the debtor. The second was that “there [was] nothing of substance to the case.”
 
 Id.
 
 at 974. The petitioning creditor had refused to accept his share of proceeds from a sale of assets conducted by a receiver pursuant to a state court proceeding. The petitioning creditor’s business policy was not to participate in any liquidation proceeding other than bankruptcy.
 

 Had the Tenth Circuit reversed the dismissal order, it would have been necessary for the distribution to other creditors to be unscrambled. The court also noted that extended litigation would result, dissipating rather than conserving the estate.
 

 Although the Tenth Circuit might have reached the same result by relying solely on the creditor’s failure to prove insolvency, it relied equally on the equitable considerations noted above. The equities favoring dismissal may have been somewhat stronger in
 
 International Shoe
 
 than they are in the instant case where no unscrambling would be required.
 
 [3]
 
 Nonetheless, the case must be read as recognizing the power of a court to dismiss an involuntary petition when that is the equitable thing to do.
 

 
 *1067
 
 We conclude that a bankruptcy court has the power to dismiss an involuntary petition when doing so will enhance the rights of the creditors. Because we find that the decision to dismiss is a discretionary one, the bankruptcy judge’s determination should be reversed only if he has abused his discretion.
 

 There is ample evidence to support the bankruptcy judge’s determination that the creditors as a whole would profit from Yorke’s continued administration of the estate.
 
 [4]
 
 Yorke did a more than competent job. He reduced the secured debt by thirty percent. He arranged a financially successful sale of assets. The compromise with Century would appear to benefit all of the creditors. Yorke’s administration of the estate was more than satisfactory to those creditors who together held over ninety percent of the claims against Bailey’s. If the petition were to proceed, the majority of work entrusted to the trustee would constitute a duplication of that already completed by Yorke. The record lacks evidence of how the petitioning creditors, or the creditors as a whole, are at all prejudiced by the proceedings under Yorke.
 
 [5]
 
 Further, we read Judge Marovitz’s opinion as sharing the bankruptcy judge’s conclusion that the creditors would actually benefit from the dismissal of the petition.
 

 Given the equities of this particular situation, we conclude that it would unquestionably be appropriate to dismiss the petition if this case were governed by the Code.
 
 See
 
 11 U.S.C. § 305(a)(1) (Supp. III 1979). Although the Act does not contain a provision comparable to section 305(a)(1), we have found neither a statutory provision nor judicial interpretation of the Act that denies a judge’s power to dismiss a petition as an exercise of discretion. We further do not believe that the bankruptcy judge abused that discretion in this case. The order of the district court is therefore reversed and that of the bankruptcy court is reinstated.
 

 [1]
 

 . The
 
 General Electric
 
 court discussed and rejected the possibility that the tort claim would be sacrificed, thereby prejudicing the creditors. It found that the creditors would have been prejudiced by delay had an unnecessary continuance been allowed.
 

 [2]
 

 . To read
 
 General Electric
 
 as the appellees and the court below suggest would put it in conflict with an earlier Tenth Circuit case,
 
 International Shoe Co. v. Smith-Cole, Inc.,
 
 62 F.2d 972 (10th Cir. 1933), in which equitable considerations favoring dismissal were one ground relied upon by the court,
 
 see infra.
 
 The
 
 General Electric
 
 court did not discuss
 
 International Shoe
 
 in its disposition.
 

 [3]
 

 .We do not understand the appellees to be suggesting that the sale of assets conducted by Yorke should be undone at this late date. If they were to urge such action, however, this case would present equities virtually identical to those present in
 
 International Shoe.
 

 [4]
 

 . We cannot say that the bankruptcy judge erred in accepting findings of fact proposed by Bailey’s when the petitioning creditors were given an opportunity to challenge those findings and failed to do so.
 

 [5]
 

 . At oral argument, the appellees contended that the fees payable to Yorke as assignee would exceed those that would be due a trustee in bankruptcy. The appellees did concede, however, that even if a trustee were appointed, Yorke and others might have a quantum meruit claim for fees. Most important is the appel-lees’ acknowledgement that there is absolutely no evidence in the record of this case regarding fees. For that reason, we cannot consider it as relevant on this appeal.