ROSS, Circuit Judge.
 

 This bankruptcy appeal is brought by Traders Bank of Kansas City from the dis
 
 *1349
 
 trict court’s
 
 [1]
 
 judgment setting aside a deed of trust as a voidable preference under 11 U.S.C. § 547(b) (1979). For the reasons set forth in this opinion, we affirm in part and reverse and remand in part the judgment of the district court.
 

 Facts
 

 Jack Perry, K.R. Adams and Norman Lewis are the principals involved in PAL Investments, Inc. (Investments), Perry, Adams and Lewis Securities, Inc. (Securities) and Briarbrook Development Corp.
 
 [2]
 
 (Briar-brook), the subjects of this bankruptcy action. On March 14, 1980, Briarbrook gave Traders Bank of Kansas City (Traders) a promissory note in the amount of $1,854,-000.00 and executed a deed of trust on real property owned by Briarbrook to secure the note. The parties stipulated that the deed of trust was given to secure the antecedent indebtedness of Investments, Securities and the three individuals.
 
 [3]
 
 No additional funds were advanced by Traders to the corporations or to the individuals at the time of this transaction.
 

 On April 2,1980, Investments and Securities filed separate voluntary bankruptcy petitions under Chapter 11 of the Bankruptcy Reform Act. Also on April 2, 1980, Securities Investor Protection Corp. (SIPC) filed its application in district court seeking liqui-elation of Securities pursuant to provisions of the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-78lll (1981).
 
 [4]
 
 On April 11, 1980, the district court granted SIPC’s application, appointed George H. Clay as trustee of Securities’ estate, and transferred the action to the bankruptcy court.
 
 [5]
 
 On June 5, 1980, Briarbrook filed its voluntary bankruptcy petition. The bankruptcy court consolidated the three corporations for liquidation purposes on July 29, 1980.
 

 On September 5, 1980, the trustee filed a complaint requesting the deed of trust be set aside as a voidable preference under 11 U.S.C. § 547(b)
 
 [6]
 
 or, in the alternative, as a fraudulent transfer under 11 U.S.C. § 548. The parties stipulated to certain facts which left for trial the issue of whether the consolidated debtor corporations were insolvent on the date of the execution of the deed of trust, qs required by subsection 547(b)(3).
 

 At trial, on April 29, 1981, the trustee sought to prove the debtors’ insolvency through the testimony of Howard D. Hull, Jr., a certified public accountant, who prepared statements of financial condition for the three debtor corporations as of April 2, 1980. The parties’ major dispute as to the computation of the debtors’ insolvency pertains to the value of certain bonds held as assets by the corporations and their related debt.
 

 
 *1350
 
 Jefferson County, Missouri Water District No. 7 issued bonds in 1972 to finance the construction of a water project. JV & M Construction Co. (JV & M), a corporation partially owned by Perry, Adams and Lewis, contracted with the water district to construct the district improvements. The project was to be financed by the 1972 bond issue. JV & M received a number of the bonds from the county and sold them to Investments for $1,900,000.00. Investments sold about $1,400,000.00 of the bonds to the public. The remaining $545,000.00 of bonds are held as assets by the debtor corporations and were pledged to Traders to secure certain notes payable by Securities and Investments. At the time this action was filed, Investments owed JV & M $999,950.00 on the purchase price of the water district bonds. For reasons not established in the record, the water project was not constructed.
 

 Mr. Hull’s testimony at trial established that the par value of all the debtors’ bonds, including the water district bonds, was $1,343,000.00 while fair market value was only $302,807.00. These figures included the water district bonds with par value of $545,000.00 and an estimated fair market value of zero. Mr. Hull calculated that the debtors’ total assets amounted to $2,038,-000.00 and liabilities were $4,174,630.00, including the debt owed to JV & M of $999,-950.00. Therefore, Mr. Hull’s figures showed the debtors to be insolvent by $2,136,630.00.
 

 Traders presented no direct evidence on the issue of solvency but relied on its cross-examination of Mr. Hull to prove the debtors’ solvency. Traders challenged Mr. Hull’s testimony regarding bond valuation as hearsay because the values had been obtained from bond appraisers who did not testify at trial.
 

 At the close of the trustee’s evidence, the bankruptcy court dismissed the second count of the complaint which alleged the deed of trust to be a fraudulent transfer. That ruling has not been appealed. On June 11, 1981, the bankruptcy court denied the trustee’s claim to set aside the deed as a voidable preference. The bankruptcy court concluded that Mr. Hull’s testimony as to bond values was inadmissible hearsay and absent any other admissible evidence of the value of the bonds, all the bonds should be valued at full par value. Thus, the court valued the bonds at par of $1,343,000.00, including the water bonds at par value of $545,000.00. Additionally, the court excluded from liabilities the $999,950.00 debt owed by Investments to JV & M and a $375,-000.00 debt not at issue here. As a result, the bankruptcy court concluded the debtors were solvent.
 

 On appeal, the district court reversed the bankruptcy court’s judgment and granted the trustee’s claim to set aside the deed of trust as a voidable preference. The district court found it unnecessary to determine the admissibility of Mr. Hull’s testimony regarding bond values because the court found other evidence in the record of the value of the water district bonds. The district court held that the evidence showed that because the water project was never constructed it was “doubtful that the Water District could be held liable on the bonds.” Thus, the court subtracted the par value of the water district bonds from the total par value of all the bonds (reducing total assets by $545,000.00) and concluded that the debtors were insolvent. Accordingly, the district court reversed the judgment of the bankruptcy court and set aside the deed of trust as a voidable preference. Traders appealed from the judgment of the district court.
 

 Discussion
 

 At the outset, we note that a bankruptcy court’s conclusions of law are freely reviewable on appeal.
 
 Matter of Multiponics, Inc.,
 
 622 F.2d 709, 713 (5th Cir.1980).
 
 See also United States v. Mississippi Valley Co.,
 
 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961). The bankruptcy court’s determination of solvency, however, is a finding of fact subject to the clearly erroneous rule.
 
 Matter of PRS Products, Inc.,
 
 574 F.2d 414, 416-17 (8th Cir.1978);
 
 See also In re Bush,
 
 696 F.2d 640, 643 n. 3 (8th Cir.1983) (bankruptcy court’s
 
 *1351
 
 findings of fact subject to clearly erroneous rule). Mindful of our scope of review in this case we proceed to the issue of the solvency of the debtor corporations at the time the deed of trust was given.
 

 Subsection 547(f) provides: “For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.” 11 U.S.C. § 547(f) (1979). The parties stipulated that the deed of trust was transferred within ninety days of the date on which Briarbrook filed its bankruptcy petition. Thus, at least initially, the trustee is afforded the benefit of a presumption that the debtor corporations were insolvent. The committee notes to section 547 state that:
 

 Subsection (f) creates a presumption of insolvency for the 90 days preceding the bankruptcy case. The presumption is as defined in Rule 301 of the Federal Rules of Evidence * * *. The presumption requires the party against whom the presumption exists to come forward with some evidence to rebut the presumption, but the burden of proof remains on the party in whose favor the presumption exists.
 

 Rule 301 provides that the “burden of proof in the sense of the risk of nonpersuasion” remains on the party in favor of whom the presumption operates.
 

 Clearly, the ultimate burden of persuasion is not shifted by the existence of the presumption. The notes of the Senate Committee on the Judiciary indicate that:
 

 The effect of the rule as adopted by the committee is to make clear that while evidence of facts giving rise to a presumption shifts the burden of coming forward with evidence to rebut or meet the presumption, it does not shift the burden of persuasion on the existence of the presumed facts. The burden of persuasion remains on the party to whom it is allocated under the rules governing the allocation in the first instance.
 

 S.Rep. No. 1277, 93rd Cong. 1st Sess. 9 (1974)
 
 reprinted in
 
 1974 U.S.Code Cong. & Ad.News 7051, 7056. The Joint Conference Committee adopted the Senate Committee’s version of Rule 301. Conf.Rep. No. 1597, 93rd Cong. 1st Sess. 5-6 (1974)
 
 reprinted in
 
 1974 U.S.Code Cong. & Ad.News 7098, 7099.
 

 The bankruptcy court held that the trustee failed to sustain his burden of proving insolvency because Mr. Hull’s testimony regarding bond valuation was inadmissible hearsay. The bankruptcy court found no other evidence of the fair market value of the bonds and thus adopted Traders’ reasoning that the bonds should be valued at par.
 

 The district court concluded that the bankruptcy court erred in failing to require Traders to rebut the presumption of insolvency. Because the district court found sufficient other evidence of bond values, it did not decide the issue of whether Mr. Hull’s testimony regarding bond valuation was hearsay.
 

 Traders argues the district court was in error in requiring Traders to bring substantial evidence to prove solvency. Traders maintains that the district court applied too stringent a test in measuring Traders’ burden of proof. From our reading of the district court’s memorandum it is questionable whether the district court used the term “substantial evidence” as a term of art or merely as an adjective. The district court stated that:
 

 The burden was then upon the
 
 creditor
 
 to produce evidence offsetting this presumption and establishing the nonexistence of the debtor corporations’ insolvency as of the date of the transfer. This Court is of the opinion that the record in this case fails to disclose any substantial evidence from which a finding of solvency of the three debtor corporations can be made.
 

 Regardless of whether the district court erroneously applied the substantial evidence test or correctly required Traders to show only some evidence of solvency, we agree with the district court’s ultimate finding that there was sufficient evidence establishing the debtor corporations’ insolvency on the date of the transfer.
 

 
 *1352
 
 The bankruptcy court’s determination that the debtor corporations were solvent was made by including as assets the bonds valued at par
 
 and
 
 by excluding from liabilities the $999,950.00 debt of Investments to JV & M arising from the purchase of the water bonds. The district court subtracted from the $1,343,000.00 par value of the bonds only the $545,000.00 par value of the water bonds. The district court agreed with the bankruptcy court’s conclusion that the $999,950.00 debt should be excluded from liabilities because due to JV & M’s failure to construct the project, Investments would most likely be under no obligation to pay JV & M.
 

 We are informed by counsel that the water project and the liabilities of the parties there involved are the subject of litigation unrelated to this bankruptcy action.
 
 Shelter Mutual Ins. Co. v. Public Water Supply District # 7 of Jefferson County, Missouri,
 
 Civ. 81-1352-C(A) (E.D.Mo.);
 
 State ex rel. Trader Bank of Kansas City v. Wibble,
 
 CV 181-1472-CCJ Div. 3 (Jefferson County, Mo.). Therefore, it is not for this court to determine the ultimate liability of Investments on its debt to JV & M; nor do we attempt such a ruling. We are, however, firmly convinced that the balance sheet treatment of the water bonds as assets and of the related debt to JV & M should be consistent. Common sense mandates that either the bonds are worthless as assets and the debt is excluded from liabilities or alternatively the bonds are valued at par and the full amount of the debt is included as a liability.
 

 The bankruptcy court’s valuation of the water bonds at par and exclusion of the debt to JV
 
 &
 
 M is unjustified. As the bankruptcy court itself noted “[i]t strains credulity for the court to believe that bonds can have worth for one purpose on the date in question and no worth for another purpose.” Consistent treatment of the water bonds and related debt, results in a finding of insolvency.
 
 [7]
 
 Thus, we affirm the district court’s finding of insolvency and its judgment setting aside the deed of trust, subject to the following discussion.
 

 $125,000.00 obligation
 

 The parties stipulated that the $1,854,-000.00 note to Traders secured by the deed of trust, included a $125,000.00 debt owed to Traders by Jack Perry, K.R. Adams and Norman Lewis, in their individual capacities. Mr. Hull testified that in March and May 1979 the individuals borrowed a total of $125,000.00 from Traders and in turn transferred the money to Investments as officers’ loans. The individuals executed a note to Traders for $125,000.00 on September 1, 1977. The debt was secured by 150,-000 shares of Securities stock privately owned by the individuals. On March 14, 1980, the $125,000.00 loan to the individuals was incorporated in the $1,854,000.00 note and secured by the deed of trust given by Briarbrook. The record does not reveal whether the individuals’ note of September 1, 1977, was returned to them or whether their 150,000 shares of Securities stock were released after the deed of trust was executed.
 

 Mr. George Lehr, Chairman of the Board of Traders Bank, testified that in January 1980, in another transaction, the bank agreed to fund a $125,000.00 overdraft of one of the corporations.
 
 [8]
 
 The overdraft
 
 *1353
 
 was to have been paid by proceeds from the anticipated sale of the Briarbrook Golf Course. The repayment was not made and the overdraft debt was eventually secured by the March 14 deed of trust.
 

 Traders argues that $125,000.00 of the total $1,854,000.00 debt secured by the deed of trust is not the antecedent debt of the debtor corporations, but rather is the personal debt of the individuals, Perry, Adams and Lewis. The bankruptcy court declined to address the question because of its finding of solvency. The district court held that “[e]ven though the individual principals may have been obligated for this $125,-000.00 there is certainly sufficient facts to support a finding that [Investments] was also obligated.” However, it is clear from the district court’s memorandum that it confused the $125,000.00 overdraft of Investments with the $125,000.00 note of the individuals. The parties filed a stipulation with this court in which they agreed the district court mistakenly found the $125,-000.00 note executed by the individuals on September 1,1979, represented an indebtedness involving an overdraft on the checking account of Investments.
 

 Traders argues on appeal that the debt of the individuals is not the debt of the corporation. Traders notes that the individuals and their debts were never made the subject of consolidation orders in this case and none of the three individuals were debtors in this bankruptcy proceeding. The trustee contends that Mr. Lehr’s testimony that he considered the corporations and the individuals as “one entity from the standpoint of getting our depositors’ money back,” is some support for a finding that the debts of the individuals should be considered the debts of the corporations. However, we are reluctant to rely solely on Mr. Lehr’s business judgment regarding repayment of the loans to support the legal conclusion that the $125,000.00 note is a debt of the corporations to Traders. In fact, other evidence tends to support Traders’ argument that the debt was personal to the individuals. Because of the district court’s confusion as to the origin of the $125,000.00 debt, we reverse the district court’s finding and remand this issue to the district court for a determination of whether the $125,000.00 debt to Traders incurred on September 1, 1979, by the individuals, is an antecedent debt of the debtor corporation.
 

 Affirmed in part. Reversed and remanded in part.
 

 [1]
 

 . The Honorable Russell G. Clark, United States District Court for the Western District of Missouri.
 

 [2]
 

 . Briarbrook Development Corp. is the wholly-owned subsidiary of PAL Investments, Inc.
 

 [3]
 

 . Prior to the execution of the note and deed of trust, Investments was indebted to Traders in the amount of $534,000.00, Securities owed Traders $1,194,837.00 and Perry, Adams and Lewis jointly owed Traders $125,000.00. The consolidated debt was $1,853,837.00 which was rounded to $1,854,000.00.
 

 [4]
 

 . A proceeding under the Securities Investor Protection Act is brought in the bankruptcy court,
 
 SEC v. White & Co.,
 
 546 F.2d 789, 791 (8th Cir.1976), and is to “be conducted in accordance with, and as though it were being conducted under” the Bankruptcy Code. 15 U.S.C. § 78fff(b) (1981).
 

 [5]
 

 . Dennis J. Stewart, Bankruptcy Judge, Western District of Missouri.
 

 [6]
 

 .11 U.S.C. § 547(b) (1979) provides in pertinent part:
 

 the trustee may avoid any transfer of property of the debtor—
 

 (1) to or for the benefit of a creditor;
 

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 

 (3) made while the debtor was insolvent;
 

 (4) made—
 

 (A)on or within 90 days before the date of the filing of the petition;
 

 $ * $ $ $ $
 

 (5) that enables such creditor to receive more than such creditor would receive if—
 

 (A) the case were a case under chapter 7 of this title;
 

 (B) the transfer had not been made; and
 

 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 

 [7]
 

 . The bankruptcy court found the debtor corporations to be solvent by approximately $300,-000.00 by valuing the water bonds at $545,-000.00 as assets and excluding the $999,950.00 debt from liabilities. Because both the par value of the water bonds and the value of the related debt exceed $300,000.00, either subtraction of the water bonds from assets or addition of the debt to liabilities would result in a finding of insolvency under the balance sheet test. 11 U.S.C. § 101(26)(A) (1979);
 
 See Constructora Maza, Inc. v. Banco de Ponce,
 
 616 F.2d 573, 577 (1st Cir.1980) (balance sheet test of insolvency applied).
 

 [8]
 

 . Testimony at trial established that the overdraft was on the account of either Investments or Securities, although it was not clear which corporation was responsible for the overdraft. The parties and the district court attribute the overdraft to Investments. Because the corporations have been consolidated in this action the account holder need not be identified. For simplicity sake we will assume the overdraft was on the account of Investments.