**In re CITIBANK, N.A., Plaintiff,**

v.

**SMITH JONES, INC., and the Tappan Company, Defendants,**

**Arising in or Related to Bankruptcy Case of Smith Jones, Inc., Debtor.**

**Bankruptcy No. 4–81–568(O).**
**Adv. No. 4–81–297(O).**

United States Bankruptcy Court, D. Minnesota.

Jan. 11, 1982.

Michael L. Meyer, Minneapolis, Minn., for plaintiff.

Steven B. Nosek, Minneapolis, Minn., for debtor-defendant Smith Jones, Inc.

David F. Snow, Cleveland, Ohio, for the Tappan Company (Tappan).

## MEMORANDUM ORDER

KENNETH G. OWENS, Bankruptcy Judge.

The above adversary proceeding came on for hearing on motion of plaintiff Citibank, N.A. (Citibank) for summary judgment.

The motion is predicated upon the proceedings had in the related Chapter 11 case of debtor and on certain contractual arrangements between the parties all 'of which are before the court. Accordingly there is no substantial dispute with respect to the following factual summary.

## APPARENT FACTS

The debtor prior to commencing its proceeding under Chapter 11 of the Bankruptcy Code was engaged directly or through various divisions in the manufacture and distribution of product at several locations. Its operations were conducted with financing supplied by plaintiff Citibank pursuant to a loan agreement, and the resulting indebtedness secured by a security interest in debtor's accounts receivable, inventory, machinery and equipment, property in possession of the bank, and proceeds.

The debtor in October of 1978 had purchased from defendant Tappan certain product lines, inventory and machinery and equipment, leased manufacturing premises from Tappan and thereafter continued to and still does operate that facility. Smith Jones assured the unpaid balance of the purchase price by granting Tappan a security interest in the machinery and equipment acquired through the purchase and other machinery and equipment acquired and to be acquired by the debtor for use in that manufacturing operation located in the leased facility together with replacements and proceeds.

To accommodate to the existing financing arrangement, Smith Jones entered into a "restated and amended loan agreement" with Citibank and Citibank entered into a "inter creditor agreement" with Tappan. The intercreditor agreement dated October 18, 1978 by way of recital recognizes the debtor's purchase of the Tappan TACD Division, the execution of a note from Smith Jones to Tappan for the unpaid balance of the purchase price in the sum of $1,900,-000.00 and further possible liabilities, the security agreement from Smith Jones to Tappan and as to the existing financing arrangement between Smith Jones and Citibank:

> "WHEREAS, Bank has entered into a loan agreement, as amended and restated (the 'Bank Loan Agreement') with the Debtor, pursuant to which it has agreed to make demand and term loans to the

Debtor from time to time in an amount not to exceed Twenty-One Million Five Hundred Thousand Dollars ($21,500,000) principal amount at any time outstanding, and Debtor has granted Bank as security therefor liens upon all of its present Inventory, Receivables and Machinery and Equipment, which Machinery and Equipment also secures all of the Debtor's present and future obligations to Tappan, as more fully set forth in the Tappan Note and Tappan Security Agreement; and * * * "

The operative portion of the agreement provides the indebtedness to Citibank and its security therefore should have priority over that to Tappan, as follows:

"1. Bank shall have a first lien and first security interest in all of the Debtor's Inventory, Receivables and Machinery and Equipment, as those terms are defined in the Bank Loan Agreement, and Tappan's security interests in Debtor's Machinery and Equipment, which shall be its sole collateral under the Tappan Security Agreement, shall be second, junior and subordinate thereto. The order of priority established as between Tappan and Bank in this paragraph of this agreement shall apply regardless of the time and priority of execution and delivery of mortgages, security agreements and/or financing statements."

The agreement deals with other matters including (1) an agreement not to "amend, modify or waive any provision of any of their respective agreements with the debtor except under certain conditions", (2) provides in certain respects for subrogation of Citibank to certain rights, (3) provides for certain conditions under which Tappan might declare a default by the debtor such provisions to be inoperative in the event of bankruptcy arrangement or reorganization, (4) provides for notice in the event Citibank desires to declare a default, and, (5) provides for cooperation between the parties to maintain their respective collateral, exchange information, and on the part of Citibank not to oppose an application by Tappan in any bankruptcy arrangement or other court proceedings to marshal funds with respect to their respective collateral. The debtor filed its proceeding under Chapter 11 of the Bankruptcy Code in this court on March 24, 1981 at which time it was indebted to Citibank in the approximate sum of $14.2 million dollars plus accrued interest, and to Tappan in a principal sum of $1.9 million dollars plus accrued interest.

The debtor on the same day filed an adversary complaint against Citibank together with a stipulation between them providing the terms and conditions for continued use of cash collateral. Pursuant to Local Rule, the issues were heard on motion that day on an expedited basis, resulting in approval of the stipulation by preliminary order authorizing use of cash collateral and providing that existing or future indebtedness be secured by a lien on all property of the debtor subject only to valid and perfected liens and security interests existing on the date of filing of the petition.

Tappan was not named a party to the adversary proceeding and was not served with process, time not permitting. It had been advised by telephone on March 23, 1981 of the impending Chapter 11 filing and of the urgent necessity to take steps to continue the business operation. Counsel for Tappan met with counsel for Citibank and Smith Jones on March 26, 1981 at which time counsel had access to a copy of the mentioned order and at the instance of the court copies had also been mailed to Tappan among others and those were received by it on or about March 27, 1981.

While there were further discussions among the parties, Tappan failed to initiate any proceeding before this court looking toward relief from the automatic stay, or from the use or employment of its security property, or otherwise, until its response was made in the present adversary proceeding commenced on August 17, 1981.

Citibank has continued to finance the operations of Smith Jones resulting in repayments and advances with the result that on August 10, 1981 debtor's total indebtedness to the bank is $9,123,187.27 more or less plus interest which consists of still remain-

ing prepetition debt of $1,270,737.09 and postpetition advances and resulting debt unpaid of $7,852,450.18 more or less.

Plaintiff's complaint seeks a determination and judgment that the intercreditor agreement applies to and remains valid with respect to the postpetition as well as the prepetition debt and that the bank's security interest in the subject matter of Tappan security interest is prior to that of the Tappan Company. Smith Jones does not contest such an adjudication but Tappan contends that the subordination agreement is only effective with respect to the prepetition debt of Smith Jones to Citibank according to its terms, but does not effectively survive to effect subordination to Citibank's postpetition advances made under the stipulation and order and accordingly that the Tappan security interest is only primed as of August 10, 1981 with respect to the now reduced remainder of unsatisfied prepetition indebtedness.

The continuing validity of a subordination agreement is provided for in 11 U.S.C. Section 510 as follows:

"(a) A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law."

There seems no question that absent the continuing and additional financing supplied by the bank the subordination agreement would be clearly effective to establish the priorities between the parties with respect to the security interest held by Tappan. The question is whether it survives with the same effect as to the postpetition indebtedness to Citibank.

I conclude that the intercreditor agreement intended simply to realize the realities of the situation resulting from the acquisition from Tappan. It was necessary for Tappan to take a clearly second position to the ongoing financing of the bank so as to assure the continued vitality of the manufacturing operation as well as to provide a tenant for the plant facility. While the intercreditor agreement does refer to a bank loan agreement by way of recital, I

conclude on the basis of a reading of the whole agreement that Tappan committed itself to a subordinate position with respect to all existing and legitimate future and continuing financing from Citibank for as the agreement states "the order of priority established as between Tappan and bank in this paragraph of this agreement shall apply regardless of the time and priority of execution and delivery of mortgages, security agreements and/or financing statements". That basic essential understanding reached in the subordination agreement is the "essence" of the contract and sufficient to extend the concession to the continuing financing effected by Citibank in this case.

The subordination paragraph in the intercreditor agreement does not expressly mention proceedings under the Bankruptcy Code which at the time could scarcely have been contemplated but such express mention is not required because of the clear intendment of Section 510(a) of the Code at least absent express agreement to suspend the priority under designated conditions of time and context. Since the intercreditor agreement as to subordination is silent with respect to a subsequent proceeding under the Bankruptcy Code, the court is governed by Section 510(a) and the agreement is enforceable in this case.

As previously mentioned there are other less essential provisions in the intercreditor agreement relating to cooperation, notice and marshalling, among others. Whether Citibank has strictly complied with all of those subsidiary provisions if material does not govern the present litigation for if Citibank has failed in any of those respects with resulting injury to Tappan, it must respond in damages in an appropriate proceeding. So far as the present file indicates, the relative positions have been maintained and the court need not assume that Tappan has, in fact, suffered any impairment of its preproceeding position.

ACCORDINGLY, IT IS ORDERED that the motion for summary judgment be and it hereby is granted and counsel for plaintiff Citibank shall prepare and submit in appropriate form and on notice an order for

declaratory judgment consistent with the foregoing.