**In re CORMARC, INC., Debtor.**

**GULFSTREAM BANK, Plaintiff,**

v.

**James B. McCRACKEN, Trustee, Richard Cappadona and Carol A. Cappadona and Charles R. Boogher, Jr., Defendants.**

Bankruptcy No. 81–00258–BKC–SMW.
Adv. No. 82–0519–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

April 18, 1983.

John J. Britton, Britton, Cohen, Kaufman & Schantz, Miami, Fla., for plaintiff.

Reggie D. Sanger, Fort Lauderdale, Fla., for Trustee.

Richard W. Smith, Fort Lauderdale, Fla., for debtor.

Samuel L. Heller, Fort Lauderdale, Fla., for defendants Cappadona.

James McCracken, Fort Lauderdale, Fla., Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come on to be heard upon an adversary proceeding brought against the Trustee, the landlords of the debtor's business premises, and a guarantor, seeking determination of validity, priority and extent of Plaintiff's lien and relief from stay; and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the argument of counsel and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

That this Court has jurisdiction over the parties hereto and the subject matter hereof.

The debtor was a manufacturer of marble products. After an unsuccessful attempt at reorganization under Chapter 11, the case was converted to a Chapter 7 proceeding.

Plaintiff holds a lien on all of the debtor's assets, consisting primarily of machinery, equipment and accounts receivable. The Trustee continued to operate the business of the debtor with the consent of Plaintiff for the purpose of completing orders already in progress and of collecting accounts receivable. The Trustee operated the business for approximately two months; he then liquidated the assets at public sale, accumulating approximately $70,000.00 in the debtor's estate.

Plaintiff claims a first priority lien on all the debtor's assets. The debtor owes Plaintiff in excess of $500,000.00.

The Trustee, by way of counterclaim, seeks the costs incurred by him while operating the business and collecting the receivables. All parties have agreed that the Trustee is entitled to recover reasonable expenses under section 506(c). The defendant landlords assert a claim for administrative rent during the Chapter 11 proceedings as well as during the post conversion period in which the Trustee operated the business. The landlords allege further that Plaintiff's post-petition security interest should be equitably subordinated to their administrative rent claim.

Plaintiff is further secured by real estate formerly owned by the principal of the debtor, who personally guaranteed the debtor's obligations. That property is presently being offered for sale in foreclosure. Both the Trustee and the landlords attempt to invoke the doctrine of marshalling in this instance, arguing that there is sufficient equity in the real property to fully satisfy Plaintiff's lien, and that Plaintiff should be required to first look to that collateral to satisfy its lien before it is permitted to recover any assets of the estate.

The Court finds and concludes that Plaintiff holds a first priority lien on assets of the debtor in the total amount of $521,858.28; that lien is subject only to the Trustee's claim for the reasonable expenses incurred in collecting the accounts receivable. The Trustee is entitled under section 506(c) to a claim on the debtor's assets, the exact amount to be determined upon proper application.

The Court finds that the administrative rent claim of the landlords should reasonably be allowed in the amount of $31,506.72, the base rental during the Chapter 7 phase. The landlords' claim is subordinate to Plaintiff's lien by virtue of the contractual agreement between those parties. The landlords argue that Plaintiff reneged on an oral agreement to sell the debtor's assets for $50,000.00 and caused substantial loss to the estate. The landlords further allege that Plaintiff mishandled a $300,000.00 SBA loan guarantee. The Court finds that the fact that the Plaintiff rejected the offer by landlords to purchase the debtor's equipment even after extensive negotiations had taken place or the fact that Plaintiff was unable to avail itself of an SBA guaranty because the debtor may have misapplied loan proceeds, does not constitute misconduct on the part of Plaintiff sufficient to warrant application of the doctrine of equitable subordination as contemplated by section 510(c). Moreover, to induce Plaintiff to lend additional funds to the debtor, the landlords executed a subordination agreement, voluntarily subordinating their rights against the debtor to those of Plaintiff. Section 510(a) makes that agreement strictly enforceable, rendering the landlords' claim subordinate to Plaintiff's lien. The Court finds no justification for changing the order of priority of claims, which the parties themselves have established by contract. *Citibank, N.A. v. Smith Jones, Inc.,* 17 B.R. 128 (Bkrtcy.D. Minn.1982).

Landlords also presented testimony at trial in an attempt to show that Plaintiff had mismanaged the sale of certain shares of stock which the debtor's principal had pledged as additional collateral for both personal and corporate loans. The landlords assert that Plaintiff has a lien on additional shares as a result of a series of stock splits which occurred prior to transfer. Plaintiff offered proof that all of the shares of stock had been liquidated, and the proceeds of sale in the amount of $35,988.01 had been applied to reduce the total balance of the loans. The evidence does not support a finding that Plaintiff mismanaged the sale of stock, nor is there any evidence of additional value in the stock beyond the proceeds of the sale already received by Plaintiff and applied to Plaintiff's claim.

Finally, the Court finds and concludes that there is little likelihood that Plaintiff can satisfy its lien from the equity in the real property formerly owned by the debtor's principal, or, for that matter, from the aggregate of collateral available to Plaintiff.

Consequently, even if the Court were to apply the equitable doctrine of marshalling assets and require Plaintiff to first seek satisfaction of the debt from the real property of the principal guarantor, no more equitable distribution of assets would be achieved. Furthermore, the rights of Plaintiff might be endangered or injuriously delayed if it was required to first look to the property of the guarantor to satisfy its lien under a marshalling theory. The Court concludes that Plaintiff's lien should be paid from the available assets of the debtor before Plaintiff is required to look to security of the guarantor. Further, should there result any equity from the sale of the real property in excess of Plaintiff's lien, this Court would then be disposed to enforce the equity of marshalling by allowing the subrogation of Plaintiff's rights in favor of junior claimants of the debtor's estate. *Farmers Merchants Bank v. Gibson,* 7 B.R. 437 (Bkrtcy.N.D.Fla.1980).

Pursuant to Bankruptcy Rule 921 a separate Final Judgment will be entered in conformity herewith.