36 F.3d 1104
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re WESTERN DISTRIBUTION CENTERS, a California limited
partnership d/b/a Trans Cal Express, Debtor.
Margaret J. SIMAS; Walter J. Simas; Walter Youngman; as
Conservator for Walter J. Simas,
Defendants-cross-claimants--Appellants,
v.
WESTERN DISTRIBUTION CENTERS, a California limited
partnership, d/b/a Trans Cal Express,
Plaintiff-cross-defendant--Appellee.
 No. 93-17193.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 14, 1994.*
Decided Sept. 16, 1994.
 
 1
 Before: CHOY, NOONAN, Circuit Judges, and MARQUEZ,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Walter and Margaret Simas (hereinafter collectively referred to as the Simases) appeal a decision of the Bankruptcy Appellate Panel (BAP) affirming the decision of the bankruptcy court to grant summary judgement to Western Distribution Centers (hereinafter Western). The BAP affirmed the bankruptcy court's holding that the Simases' secured debt is subordinate to the payment of general unsecured claims pursuant to 11 U.S.C. Sec. 510(a). A grant of summary judgement is reviewed de novo. Jones v. Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). We affirm.
 
 
 4
 The Simases argue that the bankruptcy court and the BAP erred, because they did not apply or follow this court's holding in In re Wind Power Systems, Inc., 841 F.2d 288 (9th Cir.1988). In that case, we held:
 
 
 5
 Section 544 preserves within the bankruptcy proceeding the equities among creditors that existed outside bankruptcy. It freezes the relative positions of secured and unsecured creditors at the time of the filing, reducing the incentive to file a strategic bankruptcy petition, and awarding the diligent creditor.
 
 
 6
 Id. at 292. The Simases are correct that the sale of assets triggering the dissolution after the commencement of the bankruptcy proceeding has no effect on their secured creditor status. However, this misses the point of the BAP's decision. The bankruptcy court determined that the Simases had a valid security interest, and that holding was not questioned or overturned by the BAP. The enforcement of the subordination agreement did not in any way change the Simases' status as secured creditors; it merely enforced their agreement to subordinate their loan to those of unsecured creditors.
 
 
 7
 11 U.S.C. Sec. 544 gives the bankruptcy trustee the rights and powers of the debtor's creditors in certain situations. These rights and powers are limited to the status of the creditors as of the commencement of the bankruptcy proceeding. Under Sec. 544 the trustee enjoys no power to avoid the Simases' security interest in the proceeds of Western's assets.
 
 
 8
 However, Western's rights as against the Simases can also derive from 11 U.S.C. Sec. 541. It was under this section that the BAP found that Simases had no claim to Western's assets. 11 U.S.C. Sec. 544 has no effect on the trustee's powers to enforce a subordination agreement. Therefore, this court's holding in In re Wind Power is simply inapposite to the case at bar.
 
 
 9
 The Simases claim that the BAP erred in finding that the subordination right under the Partnership Agreement was "property of the debtor" for the purposes of 11 U.S.C. Sec. 541(a). In the alternative, they argue that if the bankruptcy estate acquired any contractual rights under Sec. 541, those rights are limited to the rights of the debtor as of the commencement of the bankruptcy proceeding.
 
 
 10
 The Simases do not dispute that the contract itself is property of the estate. We need not decide whether the subordination clause constitutes property of the debtor, because under 11 U.S.C. Sec. 510(a), the subordination agreement contained in the contract is both enforceable and applicable.
 
 
 11
 The BAP based its decision that the Simases' security interest is subordinated to the general debts of the partnership on Sec. 510(a), which provides that "[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. Sec. 510(a). The BAP therefore found that because the conditions for enforcement of the subordination agreement were met (albeit post-petition), it should be enforced.[1] The BAP noted the fact that the subordination agreement contained no term that required the sale of substantially all the assets to occur pre-petition, and that bankruptcy did not add such a requirement.
 
 
 12
 As the Simases recognize, "[w]hat this really boils down to is a contract interpretation". They assert that all contractual conditions must be fulfilled pre-petition, yet cite no authority in support of this claim. In re Sunset Bay Associates, 944 F.2d 1503 (9th Cir.1991), does not help the Simases. That case holds that under California law, the priority under a subrogation agreement is contingent upon the fulfillment of the conditions in the lien containing said agreement. However, it does not hold that all such conditions must be fulfilled pre-petition. There was no issue in that case of events occurring post-petition.
 
 
 13
 Subordination agreements are enforceable under California law. See Cal.Com.Code Sec. 1209. There is no California law which indicates that the enforceability of a subordination agreement depends on the fulfillment of all conditions prior to the filing of bankruptcy. Therefore, under California nonbankruptcy law, the agreement is enforceable.
 
 
 14
 Nor does anything in the Bankruptcy Code indicate that all conditions for enforcement of a subordination agreement must occur pre-petition. At least one other Bankruptcy Court has found that a subordination agreement is enforceable as to post-petition indebtedness:
 
 
 15
 The subordination paragraph in the intercreditor agreement does not expressly mention proceedings under the Bankruptcy Code which at the time could scarcely have been contemplated but such express mention is not required because of the clear intendment of Section 510(a) of the Code at least absent express agreement to suspend the priority under designated conditions of time and context. Since the intercreditor agreement as to subordination is silent with respect to a subsequent proceeding under the Bankruptcy Code, the court is governed by Section 510(a) and the agreement is enforceable in this case.
 
 
 16
 Citibank, N.A. v. Smith Jones, Inc., 17 B.R. 128, 131 (Bankr.D.Minn.1982).
 
 
 17
 In the case at bar, the language providing for subordination in the Partnership Agreement is also silent as to the effect of a proceeding under the Bankruptcy Code. The BAP applied the correct analysis:
 
 
 18
 Appellants would have this Panel add into the partnership agreement's language the condition that the subordination language and its validity are not enforceable if the partnership's assets are sold postpetition. No such limitation is suggested by the plain language of the subordination language, or in the entire partnership agreement. Nor is such limitation provided by applicable nonbankruptcy law.
 
 
 19
 The Simases have provided no authority for the proposition that the contractual status of the debtor is fixed as of the filing of bankruptcy. We affirm the district court's enforcement and application of the subordination clause in the Partnership Agreement.
 
 
 20
 The Simases also argue that the conditions triggering the subordination clause were never met. They assert that dissolution of the partnership never occurred, because there was never a sale of substantially all of Western's assets. In support of this claim, they cite the fact that the sale of Western's assets did not include Western's receivables, which had a value of approximately $500,000.
 
 
 21
 However, this issue was not raised before the bankruptcy court or the BAP. The Simases only argued that the sale of the assets or dissolution did not occur until after the bankruptcy proceeding commenced. The record shows that there was no argument based on Western's receivables presented to the BAP. In fact, in the Statement of Undisputed Facts in Support of Motion for Summary Judgement, filed by the Simases on October 2, 1992, they state:
 
 
 22
 As of the time of the bankruptcy, there had not been a sale or other disposition by the partnership of all of or substantially all of its assets, such sale not having occurred until well into the bankruptcy proceeding.
 
 
 23
 "An appellate court will decline to review an issue not properly raised below unless it is necessary to prevent a manifest injustice." In re Marvin Properties, Inc., 854 F.2d 1183, 1187 (9th Cir.1988). By not raising it below, and providing no reason for the failure to raise the issue below, the claim that there was never a sale of substantially all of Western assets is waived. This is not case where we should dispense with the waiver rule because the claim presents a purely legal question. See id. Whether all of Western's assets were sold is at least partially if not entirely a factual question, and involves a contractual interpretation of the Partnership Agreement. Because the Simases never asserted below that less than substantially all the assets were sold, they have waived that argument.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 Honorable Alfredo C. Marquez, Senior U.S. District Judge for the District of Arizona, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Simases make much of the fact that the BAP held that the subordination was unconditionally provided for in the event that all of the partnership's assets were sold. They claim this is erroneous, because the subordination was conditioned upon dissolution of the partnership, not on sale of the assets. However, dissolution was automatically triggered by sale of substantially all the partnership assets, and thus, the subordination agreement was also triggered by the sale of the assets. The BAP impliedly found that there was a dissolution of the partnership when substantially all the partnership assets were sold