**In re AMRET, INC., etc., Debtor.**

**The ENSTAR GROUP, INC., Appellant,**

v.

**The BANK OF NEW YORK, Appellee.**

**Civ. A. No. 92–D–1207–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 6, 1994.

J. Marbury Rainer and M. Banks Neil, IV, Atlanta, GA, for plaintiff.

Dennis S. Meir, Duncan A. Roush and Theodore Brown, Jr., Atlanta, GA, for defendant.

## *MEMORANDUM OPINION AND ORDER*

De MENT, District Judge.

This matter is now before the court on appeal from the United States Bankruptcy Court of the Middle District of Alabama. The bankruptcy court found in favor of the Bank of New York ("Bank") and against the Enstar Group, Inc. ("Enstar"). For the reasons explained below, the decision of the bankruptcy court is affirmed.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 158(a), which provides that all final orders of bankruptcy judges shall be appealable to the district court located within the district in which the bankruptcy judge serves.

## FACTS AND PROCEDURAL HISTORY

Amret, Inc., the debtor in this case, is a wholly owned subsidiary of Enstar Specialty Retail, Inc. (ESR), which in turn, is wholly owned by the Enstar Group, Inc.,[1] the appellant in the case. On January 4, 1991, Amret filed a voluntary petition for protection under Chapter 11 of the United States Bankruptcy Code. Enstar Specialty Retail filed for Chapter 11 protection on the same day.

Amret became indebted to the Bank of New York, the appellee, in January 1989 under a revolving loan and letter of credit agreement. On July 27, 1990, Enstar executed a subordination agreement on behalf of their subsidiary, Amret, with the Bank of New York in order to facilitate the further extension of credit to Amret for their operating expenses. The subordination agreement provided for the contractual subordination to the bank's debt of "all obligations and liabilities of Amret to the Guarantor [Enstar Retail] and the Parent [Enstar Group], whether now existing or hereafter arising, created or incurred...." (Bank.R. Order at 2.) Under the agreement, Amret's debts to the Bank take priority over or should be paid before those of Enstar. The agreement also provided that in the event of bankruptcy, liquidation, reorganization, etc. that "all [debts to the Bank of New York] shall first be paid in full, or such payment shall have been duly provided for, before any further payment is made with respect to the [other creditors]." (Stip., Exh. 1 at 4–5.)

In March 1991, the bankruptcy court authorized Amret to borrow a maximum of $3,000,000 from Enstar. Pursuant to the bankruptcy court's order, the resulting debt or claim to the Amret's estate was to be treated as an administrative expense under 11 U.S.C.A. § 503(b)(1) (West 1993). Amret subsequently borrowed $500,000 pursuant to

---

1. The Enstar Group, Inc. is a New York corporation, which has its principle place of business in Montgomery, Alabama. On May 31, 1991, Enstar filed a voluntary petition for protection under Chapter 11. Enstar, now a reorganized debtor, will operate only for a limited period of time in the future to collect and pursue certain assets and to maximize others for the ultimate benefits of and distribution to Enstar's creditor.

the court order, and the debt became due on May 21, 1991.

In July 1991, Enstar filed a motion with the bankruptcy court to order Amret to pay the $500,000 with interest immediately. The Bank of New York objected.[2]

The bankruptcy court issued an order on October 7, 1991, denying Enstar's petition for immediate payment of the $500,000. In the order, the court invited Enstar to repetition the court if circumstances changed in a way to warrant a different result. On March 6, 1992, Enstar filed another motion to compel Amret to repay a $500,000 loan "made to the debtor **postpetition** with court approval." (Bankr.Op.Den.Mot. to Compel at 1.) Enstar alleged that the following changed circumstances warranted a different result than the one the bankruptcy court rendered in October 1991: "(1) the chapter 11 plan of Enstar Group has been confirmed; (2) Amret has liquidated almost all of its assets pursuant to court order; and (3) Amret no longer has a need to obtain credit." (*Id.* at 3.)

The bankruptcy court concluded that, as a matter of law pursuant to 11 U.S.C. § 510(a), that the filing of the Chapter 11 bankruptcy petition does not affect the enforceability of the subordination agreement. (*Id.* at 4.) Moreover, the court found that Enstar made the loan with full knowledge of the subordination agreement and without requesting a waiver from the bank. Furthermore, the bankruptcy court ruled that the elements required for equitable subordination were not present in the case. (*Id.* at 4–5.) Lastly, the court found that the subsequent reorganization of the Enstar group was not relevant to the determination of the priority of repayment between the Bank and Enstar. (*Id.* at 5.) In sum, the bankruptcy court concluded that the loan should now be repaid, but that the Bank had a superior claim to the repayment of loan proceeds than Enstar. (*Id.*)

## STANDARD OF REVIEW

The applicable standard of review with respect to findings of fact is the "clearly erroneous" standard. *Green Tree Accep-*

*tance, Inc. v. Calvert (In re Calvert),* 907 F.2d 1069, 1071 (11th Cir.1990). Findings of fact by the bankruptcy court are subject to reversal when "the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

As to conclusions of law, the standard of review is *de novo,* and the district court may independently examine the applicable law and draw its own conclusions after applying the law to the facts without regard to the decision of the bankruptcy court. *In re Chase & Sanborn Corp.,* 904 F.2d 588, 593 (11th Cir.1990).

## DISCUSSION

The issue before the court is whether the bankruptcy court correctly determined the priority of payment between the Enstar Group and the Bank of New York. In other words, is the Bank of New York's claim to funds superior to the Enstar Group's claim as a result of the subordination agreement? Enstar argues that the prepetition subordination agreement is not enforceable or does not apply to postpetition debts which were authorized by the bankruptcy court. On the other hand, the Bank of New York argues that the subordination agreement is in full force and effect and that as provided by the agreement, Amret's debts and the underlying interest should be paid in full prior to the payment of any other creditors, including the Enstar Group as a postpetition lender.

A debt subordination agreement does not affect the amount that a creditor will receive, but only the priority in which a debtor will make payments. In other words, a debt subordination payment "provides that subordinated creditor's right to payments will be subordinated to rights of another claimant." *In re Lantana Motel,* 124 B.R. 252, 255 (Bankr.S.D.Ohio 1990). The subordination agreement involved in the present case is a "complete" subordination agreement which means that the contract required that

---

**2.** The Bank of New York filed a proof of claim for over $12,000,000 against Amret. (Bankr.Op.

Den.Mot. to Compel. at 2.)

all indebtedness be paid to the Bank of New York in full before any of the subordinated creditors, Enstar being one of them, are allowed to receive payments. *Lantana,* 124 B.R. at 255–56.

Appellant Enstar argues that the subordination agreement is unenforceable for the following reasons: (1) prepetition subordination agreements are not enforceable against postpetition debts which have been authorized by the court; (2) subordination agreements are not enforceable in dual bankruptcy situations; (3) the subordination agreement is not enforceable as to property of Enstar's bankruptcy estate; (4) subordination agreements are unenforceable based upon a "new entity" theory; and (5) the subordination agreement is unenforceable as to Enstar's loan to Amret based upon the federal purposes of the Bankruptcy Code.

First, Enstar argues that the subordination agreement is not enforceable against postpetition debt authorized by the court. Section 510(a) of the Bankruptcy Code provides the following: "A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under the applicable nonbankruptcy law." 11 U.S.C.A. § 510(a) (West 1993); *see In re Cliff's Ridge Skiing Corp.,* 123 B.R. 753, 764 (Bankr.W.D.Mich. 1991); *In re Mihalko,* 87 B.R. 357, 364 (Bankr.E.D.Pa.1988); *In re Smith,* 77 B.R. 624, 627 (Bankr.N.D.Ohio 1987). The court in *Citibank, N.A. v. Smith Jones, Inc. (In re Smith Jones, Inc.),* 17 B.R. 128 (Bankr. D.Minn.1982), found that, even though the agreement was silent as to the effect of a petition in bankruptcy, the subordination agreement survived as to postpetition indebtedness and the order of priority established in the agreement applied to both prepetition and postpetition indebtedness. *Citibank,* 17 B.R. at 131. Therefore, unless specifically waived by the Bank of New York when Enstar entered into the postpetition loan agreement, the subordination agreement between Amret and the Bank of New York is enforceable after Amret's voluntary petition for reorganization under Chapter 11, unless a invalid under nonbankruptcy contract law. *See Lantana,* 124 B.R. at 255 (holding that sub-

ordination agreements which are enforceable under nonbankruptcy law are also enforceable in Chapter 11 cases). Enstar does not argue that the subordination agreement was contractually invalid. Instead, Enstar argues that the agreement is unenforceable as to postpetition debt authorized by the court. Enstar was well aware of the subordination agreement between Amret and the Bank when Enstar made the loan to Amret. The order of the bankruptcy court in no way waives the provisions of the subordination agreement. Indeed, the order does not mention the subordination agreement. Enstar, at the time of the loan, also did not seek a waiver from the Bank so its claim would not be subordinated to those of the Bank. The court is unpersuaded by Enstar's argument. The court finds that absent another factor rendering the agreement invalid, the subordination agreement was in no way waived or unenforceable due to the provisions of the bankruptcy court order authorizing the postpetition loan from Enstar to Amret.

Secondly, Enstar argues that a prepetition subordination agreement is not enforceable as to postpetition loans in a dual bankruptcy situation and in support of their argument, cite *Sumitomo Trust & Banking Co. v. Holly's, Inc. (In re Holly's, Inc.),* 140 B.R. 643 (Bankr.W.D.Mich.1992). In *Holly's,* the bankruptcy court dealt with a situation involving the bankruptcy of the debtor and the debtor's management company. Although the court explained a lengthy and thorough scenario, the crux of the case involved a subordination agreement that was entered into by the debtor and a bank creditor prior to the petition for bankruptcy status. The agreement was a complete subordination agreement, providing that the bank be repaid in full prior to the payment of the other creditors. The debtor paid past due management fees to the debtor's management company with postpetition earnings prior to repaying loan to the bank. The court ordered that the subordination agreement with the bank mandated that the indebtedness from the debtor must be paid in full before the management fees owed to the management company. In other words, the payment of management fees to the manage-

ment company prior to full payment to the bank violated the debtor's subordination agreement to the bank. Therefore, the court ordered that the debtor should pay the money allocated for the management fees directly to the bank. The court found that the subordination agreement was not enforceable as to postpetition earnings. Therefore, any management fees accrued postpetition by Holly's were not subject to the subordination agreement. However, the court found that the subordination agreement was enforceable as to prepetition management fees accrued by Holly's. The fees earned prior to the petition for bankruptcy were subordinated to the bank's debts. The court reasoned that to rule that postpetition debts were subordinated would deny the debtor the "fresh start" that bankruptcy proceedings are intended to give debtors. The facts before the court differ in several ways. First, the loan and interest owed to Enstar by Amret generated prepetition income to Enstar not postpetition income, which under the ruling in *Holly's* would be subordinated. The court in *Holly's* ruled that postpetition earnings only are not subject to a subordination agreement. Secondly, the subordination agreement involved was not a traditional subordination agreement as in the present case. The court finds that the facts in *Holly's* are distinguishable and the bankruptcy court's findings not to enforce a subordination agreement in a dual bankruptcy situation unpersuasive.

◼ Thirdly, Enstar argues that the subordination agreement is not enforceable against property of the Enstar estate, of which Enstar asserts the $500,000 loan is properly a part. The bankruptcy court stated in its order that the Chapter 11 status of Enstar does not change the outcome of the case at hand nor does the confirmed plan contain any provision affecting the relationship between Enstar and the Bank. (Bankr. Op.Den.Mot. to Compel at 5.) In support of its argument, Enstar relies solely on the court's ruling in *Holly's*. In a previous discussion, the court has distinguished the present facts from those in *Holly's*. Therefore, the court finds that Enstar's Chapter 11 status is not relevant in determining whether the Bank or Enstar has priority of payment from Amret.

◼ Fourth, Enstar argues that the subordination agreement is unenforceable because Amret is a "new entity." As to the "new entity" theory, the court notes that the Court of Appeals for the Eleventh Circuit has, in the past, recognized the "new entity" theory in *Local Unions v. The Brada Miller Freight Sys. (In re Brada Miller Freight Sys.)*, 702 F.2d 890, 894–95 (11th Cir.1983). However, the United States Supreme Court's decision in *National Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), indicates that the theory is no longer illustrative in the bankruptcy area. The Court opined that "it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition." *Bildisco*, 465 U.S. at 528, 104 S.Ct. at 1197. Appellant Enstar has cited no cases involving similar facts which support its assertion that prepetition subordination agreements are not enforceable because the debtor is a "new entity" against postpetition lenders, who have failed to obtain a waiver of the agreement. In light of § 510(a), the court is unclear how Enstar can argue that subordination agreements are not enforceable after Amret postpetition became a "new entity." Absent clear authority otherwise, and in light of the clear language of the Supreme Court, the court finds that the "new entity" theory is ineffectual in determining the correctness of the Bankruptcy Court's order.

◼ Fifth, Enstar argues that the subordination agreement is not enforceable as to Enstar's loan to Amret based upon the federal purposes of the Bankruptcy Code. Enstar again cites the court's decision in *Holly's* to support its conclusion. The court, having found the case distinguishable from the present facts, also finds that the purposes of the Bankruptcy Code mandate a decision either for Enstar or the Bank.

◼ "Ordinary rules governing the construction of contracts should control the interpretation of the subordination agreement which means giving the words 'their plain and ordinary meaning, as an ordinary, average, or reasonable person would under-

stand them.'" *In re Eaton Factors Co.*, 3 B.R. 20, 22 n. 3 (Bankr.S.D.N.Y.1980). The court finds that the provisions of the subordination agreement in question are clear and unambiguous and should be interpreted according to their clear meaning. The subordination agreement provides that in the case of bankruptcy the following "all [debts to the Bank of New York] shall first be paid in full, or such payment shall have been duly provided for, before any further payment is made with respect to the [other creditors]." (Stip., Exh. 1 at 4–5.)

The court finds based on the clear, unambiguous terms of the subordination agreement that between the Bank of New York and Enstar, the Bank has the superior claim to repayment of the loan proceeds. Therefore, the court finds that the decision of the Bankruptcy Court is due to be affirmed.

### CONCLUSION

For the reasons explained, it is CONSIDERED, ORDERED, and ADJUDGED that the final order of the Bankruptcy Court for the Middle District of Alabama be and the same is hereby AFFIRMED.

It is further CONSIDERED and ORDERED that all costs herein incurred are taxed against the appellant, Enstar Group, Inc., for which let execution issue.